Daniels, J.
The defendants have been arrested in an action to recover the price of goods sold and delivered, for removing, disposing of and secreting their property with intent to defraud their creditors, since the making of. the contract of purchase, and in contemplation thereof. The goods were sold upon credit, and the terms for which the credits were given had not ended when the action was commenced. But to avoid the credits, the plaintiff relies upon proof of the fact that the debt'was fraudulently contracted by the defendants. And proof has been produced by the affidavits to establish that fact. This has been met by other affidavits made by the defendants denying the making of such representations. But the preponderance of the evidence concerning this fact is decidedly with the plaintiff. For Trowbridge, who was in charge of the credit part of the plaintiff’s business, swears positively that the defendant Rosenberg represented to him that the defendants’ firm of Rosenberg & Co. had on the 1st of January, 1885, a surplus capital of $45,000, owing no more than $15,-000, and no borrowed money, and carried a stock of from $20,000 to $25,000. This representation is denied by Rosenberg. But his denial is not of equal force to the statement of Trowbridge, by reason of his interest and his direct contradiction by Choate, Valentine & Wood, to each of whom similar representations are stated to have been made near the same time. Then added to that is the fact that dealers in goods would be indisposed to open accounts with new customers without information exhibiting a favorable financial condition. No other view is supported by the case than that the representations were made as they are stated to have been. And as it is not pretended that they were truthful, the facts were disclosed from which an intent to deceive is to be inferred, and that avoided the credits obtained in that manner. The action, as the legal rule has been often applied, could be well brought for the price of the goods purchased by the defendants from the plaintiffs, inasmuch as .their delivery is stated by Trow-bridge to have been induced by these representations, and they were in fact made in such a manner and at- such a time as very naturally to be attended with that result. The misrepresentations annulled the credit, and the fact * that the defendants had the goods under a contract of purchase authorized the seller at once to sue for and recover the price.
*19 That the debtors did dispose of their property intending to defraud their creditors, has already been considered and held in the case of Schoff v. Rosenberg, which was heard and decided in the early part of the present year. And the facts now presented do not differ so much from those then appearing as to render that decision inapplicable to this appeal. Another examination of the affidavits, and the facts maintained by them, fail to expose any infirmity in that decision. About the middle of July, as the facts are stated by the defendants, the intention was formed of selling their goods and collecting their accounts and paying the proceeds upon debts alleged to be owing to their relatives and friends to the exclusion of other creditors. That plan is stated to have been adopted after advice ob- " tained as to its feasibility from counsel. And while it might have been lawful to do that, if the debts were bona fide, and there were no intent intermingled to defraud the other creditors, it still afforded ground for very grave suspicions that part of the purpose was to place the property in friendly hands, from which the debtors could afterwards obtain advantages which would not be expected from mere general creditors. The design in part would then be to promote their own interests at the expense and loss of those who might afterwards feel indifferent towards them. And that such was their object, and that they did in fact dispose of their property to defraud the creditors not specially friendly to them is further sustained by the affidavits. They continued to buy goods on credit until the intention was formed of selling what they had, and collecting what was owing to them, and paying or delivering the proceeds to their relatives and friends to whom the defendant Eosenberg states they owed about the sum of $20,000. At this time he states the value of their merchandise at about the sum of $18,000 or $19,000. The debts owing them at the sum of $19,985.80, of which $9,574.89 was uncollectable and worthless. The defendant further states that their goods brought $17,307,97, and they discounted the debts owing them by deducting the interest upon them, and paid the entire amount realized to creditors named, amounting to the sum of $25,574.05, and being more than the debts he said they owed. In the amounts paid is $8,082.45 to Theresa Eothschild, the wife of one and sister of the other defendant, to whom it is stated the firm was indebted for items of money loaned in 1882 amounting to $5,696.79. • This part of this alleged indebtedness was directly discredited by the representations of Eosenberg, made to induce the sales of goods in the year 1885, when it was stated that the firm owed no borrowed money. And the same thing was repeated in the statement made to *20 the commercial agency of Wood & Co. And so it was by the manner in which the judgment was afterwards entered in favor of Theresa Rothschild against the firm. That was recovered upon a summons served in the office of the attorneys commencing the action, and an offer and acceptance made and served the same time. An execution followed immediately, upon which about $1,500 of the firm’s unsold merchandise, and being all that then remained, was levied. The course of the proceedings was such as to characterize it throughout as designed to place the proceeds of the debtor’s property wholly in the hands of relatives and friends for the probable future benefit, to a great extent, of the debtors themselves. And the' removal of their books, and the valueless papers locked in their safe, were in strict accordance with that object. The whole scope of action taken by them is suggestive of unfairness in their dealings with their creditors to secure an expected and untimate benefit for themselves. The object of the law is to insure a just and fair application of the property of insolvent debtors to the payment of their creditors. That has been defeated by the conduct of these debtors, which has been attended with the effect of defrauding their creditors by placing a considerable part of their property in friendly hands to benefit themselves in future. The order in this case, and in that of William Turnbull and others against the same defendants, depending on the same material facts, was right. And as nothing was levied upon or realized under the attachments, these orders should be affirmed, with costs, and the disbursements attending the appeals.
Brady, J., concurs.